**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

DAVID M. T., II,

                            Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

No. 5:24-CV-01262
(PJE)

_____

**APPEARANCES:**

Olinsky Law Group
250 South Clinton Street – Ste. 210
Syracuse, New York 13202
Attorneys for plaintiff

Social Security Administration
Office of Program Litigation
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

**OF COUNSEL:**

HOWARD D. OLINSKY, ESQ.

NATASHA OELTJEN, ESQ.
VERNON NORWOOD, ESQ.

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

Plaintiff David M. T., II[2] brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of the Social Security Administration ("the

Commissioner" or "defendant") denying his applications for disability insurance and

---

[1] The parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, Local Rule 72.2(b), and General Order No. 18.   _See_ Dkt. No. 4.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

disability insurance benefits. *See* Dkt. No. 1 ("Compl."). Plaintiff cross moves for the Commissioner's decision to be vacated and the matter remanded for further administrative proceedings. *See* Dkt. No. 12.[3] The Commissioner cross moves to affirm. *See* Dkt. No. 17. For the following reasons, the Commissioner's cross-motion is granted.

## I. **Background**

On June 24, 2020, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging a disability onset date of October 15, 2017. The Social Security Administration ("SSA") initially denied plaintiff's application on January 14, 2021, and upon reconsideration on June 18, 2021. *See* T at 85, 99. Plaintiff requested a hearing, and a hearing was held on March 9, 2022, by video. *See id.* at 32-53. Administrative Law Judge ("ALJ") Gretchen Greisler issued an unfavorable decision, and the Appeals Council denied plaintiff's request for review. *See id.* at 12-31, 1-6.

Plaintiff commenced an action in this Court, and on December 11, 2023, the Court, pursuant to a consent order, remanded the case to the SSA under sentence four of 42 U.S.C. 405(g). *See* T at 2113. On January 10, 2024, the Appeals Council vacated the ALJ's March 21, 2022, decision and remanded the matter to an ALJ. *See id.* at 2217-2122. On August 16, 2024, ALJ Greisler issued a decision finding plaintiff not disabled. *See id.* at 2033-56. *See id.* at 4. Plaintiff commenced this action on October 16, 2024. *See* Dkt. No. 1.

---

[3] Citations to the parties' briefs refer to the pagination located at the header of each page, generated by the Court's electronic filing system, not the documents' original pagination. "T" followed by a number refers to the pages of the administrative transcript, and the Court's citation to the administrative transcript is to its original pagination located in the bottom left corner of each page. *See* Dkt. No. 8.

## II. **Legal Standards**

### A. **Standard of Review**

Sentence four of 42 U.S.C. § 405(g) grants the court the authority "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the Commissioner's final decision, a district court may not determine de novo whether an individual (the "claimant") is disabled. *See Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). The district court may reverse the Commissioner's final decision only if the ALJ failed to apply the correct legal standards or support the decision with substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal citations omitted). This is "a very deferential standard of review," meaning that once an ALJ finds facts, the court can reject them "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotation marks omitted); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (reminding that it is for the ALJ to weigh conflicting evidence in the record) (citing *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the court should not affirm even though the ultimate

conclusion is arguably supported by substantial evidence. *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986). However, if the ALJ applied the correct legal standards, and substantial evidence supports the decision, the court must uphold the Commissioner's conclusion even if the evidence is "susceptible to more than one rational interpretation." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (quoting *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014)).

B. **Determination of Disability**

Under 42 U.S.C. § 423, every individual who is under a disability shall be entitled to disability benefits. 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A). A disabling impairment is an affliction that is so severe it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. *See id.* § 423(d)(2)(A). Such impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3); *see also Ventura v. Barnhart*, No. 04-cv-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) ("Determinations of severity are based on objective medical facts, diagnoses or medical opinions inferable from these facts, subjective complaints of pain or disability, and educational background, age, and work experience.") (citing, *inter alia*, *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

4

To determine whether the claimant is entitled to disability benefits, a five-step evaluation, based on 20 C.F.R. §§ 404.1520 and 416.920, is used:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in [20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")].  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff bears the burden of proof at the first four steps, and the Commissioner bears the burden at step five to show that the plaintiff can engage in gainful employment somewhere.  *See DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467).

5

### III. **ALJ's Decision**[4]

ALJ Greisler first observed that plaintiff did not engage in substantial activity from his alleged onset date of October 15, 2017, to the date of last insured, December 31, 2020. *See* T at 2038. At step two, the ALJ concluded that plaintiff had the following severe impairments: disc protrusions, generalized anxiety disorder, major depressive disorder, social anxiety disorder, panic disorder, history of spontaneous pneumothorax, and asthma. *See id.* at 2039. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments[.]" *Id.* At step four, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except he cannot tolerate more than mild exposure to respiratory irritants or extreme temperatures. The claimant can tolerate occasional interaction with supervisors, coworkers, and the public. He cannot work around the crowds of people. The claimant can perform tasks at a consistent, goal-oriented pace, but not at a fast production rate pace, such as would be experienced in assembly line type of work. He can make decisions directly related to his or her work and tolerate occasional minor changes.

*Id.* at 2041. At step four, the ALJ determined that plaintiff was unable to complete any past relevant work. *Id.* at 2046. At step five, the ALJ determined that plaintiff could perform the following jobs existing in significant numbers in the national economy:

| Job | Exertional Level | SVP/Skill Level | DOT | Jobs Nationally |
|---|---|---|---|---|
| Routing Clerk | Light | 2/unskilled | 222.687-022 | 41,194 |
| Photocopy Machine Operator | Light | 2/unskilled | 207.685-014 | 16,965 |
| Page | Light | 2.unskilled | 249.687-014 | 16,143 |

---

[4] The Administrative Transcript was filed in a manner in which it was broken into many parts. The ALJ's decision and hearing transcript can be found at docket number 8-10.

*See id.* at 2047. Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act" from the alleged onset date to the date last insured. *Id.* at 2048.

## IV. **Discussion**

### A. **Arguments**

Plaintiff argues that the Commissioner did not meet his step five burden. *See generally* Dkt. No. 12. To wit, he contends that there exists an "unresolved" conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT") specific to the router position. *See id.* at 8. In the RFC, the ALJ concluded that plaintiff was unable to perform work "at a fast production rate pace, such as would be experienced in assembly line type of work," yet found that plaintiff could perform the router position. *See id.* at 9. However, plaintiff contends, "[s]everal district courts[5] have found that the router job presents an apparent conflict with RFCs that preclude production-based work." *Id.* at 9. "Until this conflict is resolved, the routing clerk position does not constitute substantial evidence of other work Plaintiff could perform in the national economy." *Id.* at 10. Plaintiff further asserts, "[w]hen the routing clerk job is removed from the equation at Step Five," the two remaining positions – page and photocopy machine operator – are not jobs that exist in significant numbers of the national economy that plaintiff can perform. *Id.*

The Commissioner argues that plaintiff has failed to demonstrate a conflict between the DOT, the ALJ's decision, and the VE's testimony about the routing clerk

---

[5]  Plaintiff cites to District Court cases from outside of this Circuit. See Dkt. No. 12 at 9-10.

position; thus, SSR 00-4p[6] does not apply.  *See* Dkt. No. 17 at 8.  The Commissioner contends that the DOT's inclusion of one reference to a conveyer belt in the routing clerk position does not create a conflict because (1) "the mere presence of a conveyer belt does not necessarily render a position fast paced," and (2) the definition indicates only that a conveyer belt *may* be present but is not necessarily required.  *Id.* at 9.  The Commissioner acknowledges plaintiff's citations to decisions from other Districts and Circuits that have adopted plaintiff's reasoning but advises the Court against "follow[ing] this line of authority."  *Id.* at 11.  The Commissioner contends that, even if a conflict existed, the ALJ "adequately accounted for it" by including a hypothetical" that did not include the prohibition against work at a fast production rate pace, and the vocational expert testified that the three occupations at issue would be available."  *Id.* The Commissioner argues that the ALJ then explicitly added the place limitation and the VE confirmed, "[t]hey could still do all of these jobs."  *Id.*

Next, the Commissioner asserts that, because plaintiff improperly discounts the router job, the router job numbers should be included, and when the three positions are considered together, there are jobs that exist in significant numbers in the national economy.  *See* Dkt. No. 17 at 13.  He further argues that plaintiff improperly "relies not on the vocational expert's testimony for the number of photocopy machine and page jobs, but rather, on his attorney's own research presented for the first time to this Court."  *Id.*  The Commissioner asserts that plaintiff "presents no argument for why these numbers should be credited over those which the vocational expert provided."  *Id.*  The

---

[6]  As parties recognize, although "SSR 00-04[ was rescinded and replaced effective January 6, 2025.  *See* SSR 23-rp, 89 Fed. Reg. 97,158 (Dec. 6, 2024)[,] . . . SSR 00-04p still governs this case because it remained in effect at the time of the ALJ's August 2024 decision.  *See* 97, 159 n.1 (effective date provision)."  Dkt. No. 17 at 9 n.5; Dkt. No. 12 at 8-9 n.1.

Commissioner argues, "Plaintiff appears to assume, without any basis in the record, that the vocational expert simply plugged the DOT codes into SkillTran to obtain her numbers. But there is no basis for this assumption," as plaintiff did not ask any questions of the VE about her sources or methods, submit the SkillTran data to the Appeals Council, or "laid sufficient foundation to allow the Court to evaluate the probative value of the evidence he now submits[.]" *Id.* at 13-14.

## B. **Analysis**

SSR 00-04p provides that where there exists a conflict between the DOT and VE testimony, the ALJ must identify and resolve any conflict before relying on the VE's testimony.

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
> Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

S.S.R. 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).

> "This Ruling 'place[s] an affirmative duty on the ALJ to identify and resolve any conflict between the [VE]'s testimony and the DOT before relying on such testimony.' " Marjanovic v. Comm'r of Soc. Sec., No. 19-CV-246-FPG, 2020 WL 3445676 *3, 2020 U.S. Dist. LEXIS 110811 *8 (W.D.N.Y. June 23, 2020) (internal citation omitted). Indeed, "[w]here there is an unexplained and direct contradiction of the DOT, the expert's testimony does not constitute substantial evidence to support a finding that jobs are available." Palacios v. Berryhill, 17-cv-04802 (ALC), 2018 WL 4565141 *12, 2018 U.S. Dist. LEXIS 163293 *35 (S.D.N.Y. Sept. 24, 2018) (internal citations and quotations omitted).

9

*Sammie-Jo A. O. v. Comm'r of Soc. Sec.*, No. 20-CV-273-A, 2021 WL 2451044, at *3

(W.D.N.Y. June 16, 2021).

> The DOT defines routing clerk as follows:
>
> Sorts bundles, boxes, and lots of articles for delivery: Reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slips, using charts. Places or stacks articles in bins designated according to route, driver, or type. May be designated according to work station as Conveyor Belt Package Sorter (retail trade). May sort stacks of mail and be known as a Mail Sorter (r.r. trans.).

222.687-022 Routing Clerk, DICOT 222.687-022, 1991 WL 672133. As noted, plaintiff

argues that there exists an "obvious conflict" between the DOT description for routing

clerk and the VE's testimony with the ALJ's RFC limiting plaintiff to no work at a fast

production rate pace, such as assembly line work. Dkt. No. 12 at 8.

Counsel for plaintiff presented hypotheticals to the VE that indicated, as relevant

here, that the individual could perform light work and "can perform tasks at a consistent

goal-oriented pace but not at a fast production rate pace as experienced in assembly

line type of work and can make decisions directly related to his own work and tolerate

occasional work changes." T at 2071-72. As noted, the VE presented the following

jobs: marker, stating there are approximately 165,000 jobs in the national economy;

routing clerk, stating there are approximately 123,000 jobs in the national economy; and

photocopying machine operator, stating that there are approximately 16,000 jobs in the

national economy. *See id.* at 2072. Plaintiff's counsel asked if the VE's testimony was

consistent with the DOT and/or the SCO.[7] *See* T. at 2077. The VE confirmed that it

---

[7] Selected Characteristics of Occupations. *See Nieto v. Comm'r of Soc. Sec.*, No. 20-CV-3138 (BMC), 2021 WL 1784317, at *2 (E.D.N.Y. May 5, 2021) (defining SCO as "a companion publication to the DOT, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles.").

was, noting, among other things, that the DOT "does not directly address production pace," and that her testimony as to that "area[]" was "based off of my training and experience in job placement, job analysis, and job development." *Id.*

Recognizing that some courts – albeit not within this Circuit as far as this Court can discern – have rejected the routing clerk position for plaintiffs with production limitations due to the conveyer belt language, whereas others have not been concerned due to the DOT's description indicating that the roles *may* involve production pace, the undersigned is more persuaded by the cases plaintiff cites. *See* Dkt. No. 12 at 9-10 (quoting *Erica A. v. Dudek*, No. 230cv015889, 2025 WL 885706, at *5 (N.D. Ill. Mar. 21, 2025)).

Citing to the original VE testimony from the first hearing from VE Blythe, the Commissioner points out that the VE's hypothetical still found that the claimant could perform the router job even after adding only the pace limitation, which the Commissioner contends suffices to demonstrate that the VE, much like in *Erica A.*, concluded that the router job could be performed by someone with pace limitations. Dkt. No. 17 at 11.  However, neither the ALJ nor the VE elicited this testimony from the VE at the instant hearing, only at the 2022 hearing, which was held pursuant to the vacated March 2022 ALJ decision.  *Compare* T. at 48-52 *with id.* at 2071-2077 (dkt. no. 8-10).  Regardless, there was no testimony elicited from the VE[8] with respect to the proportion or number of router jobs that could require such assembly-line work. However, as explained below, "because the ALJ provided at least two jobs in the national economy existing in significant numbers that plaintiff can perform, I find no

---

[8]  This is true both VE Calderon-Hall and VE Blythe.

cause for remand on this ground." *Abigail L. v. Kijakazi*, No. CV 21-2275 (FLW), 2022 WL 16362468, at *13 (D.N.J. Oct. 27, 2022) (citing *Danilowicz v. Kijakazi*, No. 20-01605, 2022 WL 19624, at *7 (M.D. Pa. Jan. 3, 2022)).

Plaintiff argues that once the router job is eliminated, the remaining jobs do not exist at significant numbers in the national economy such that the Commissioner could meet his step-five burden. *See* Dkt. No. 12 at 10-11. The numbers plaintiff relies on are ones his counsel pulled from SkillTran – 4,464 (page position) and 5,493 (photocopy machine operator position) – which amount to 9,957 jobs in the national economy. *See id.* The Commissioner contends that plaintiff is improperly substituting the SkillTran numbers for the much higher numbers the VE testified to for the page and photocopy machine operator positions. *See* Dkt. No. 17 at 13. The Commissioner further argues that (1) plaintiff bases his argument "entirely on raw data printouts from SkillTran and other sources and his attorney's own interpretation of that data[,]" and (2) plaintiff waives this argument having not raised it at the administrative level. *Id.* at 13-14.

VE Calderon-Hall testified that there exist the following jobs for someone with the proposed hypothetical: (1) routing clerk, approximately 123,000 jobs in the national economy; (2) photocopying machine operator, approximately 16,000 jobs in the national economy; and (3) marker, approximately 165,000 jobs in the national economy. *See* T at 2047. The VE did not, however, testify as to her source for numbers of jobs; however, she confirmed that her testimony – other than as to matters not specifically addressed by the DOT – was consistent with the DOT and SOC (Standard Occupational Classification). *See id.* at 2077. She further testified that the DOT does

not "directly address production pace," and that her finding with respect to that area was "based off of my training and experience in job placement, job analysis, and job development." *Id.* "[A] vocational expert is not required to identify with specificity the figures or sources supporting h[er] conclusion, *at least where [s]he identified the sources generally." McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (emphasis added).  However, here, the source of the VE's numbers is unknown.  Although the VE testified that she relied on her experience for matters related to production pace, she did not testify that she relied on her experience in reaching the provided job numbers nor did she explicitly state that she relied on the SOC for her job numbers.[9]  *See generally Paduani v. Colvin*, No. 16-CV-2300 (LDH), 2017 WL 4351510, at *3 (E.D.N.Y. Sept. 29, 2017) (citing *Galiotti v. Astrue*, 266 F.App'x 66, 68 (2d Cir. 2008) (summary order)); *cf. Tiffany T. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00626-MPS, 2023 WL 10949091, at *15 (D. Conn. Sept. 1, 2023), *report and recommendation adopted*, No. 3:22-CV-00626 (VAB), 2024 WL 1230256 (D. Conn. Mar. 22, 2024) ("I conclude that in the circumstances of this case the ALJ's Step Five conclusions were supported by substantial evidence, even though the VE did not identify the sources of his job numbers" and noting that the VE testified as to his experience and his testimony on job numbers and that his resume was part of the record).

---

[9]  The Court observes that it appears that the SOC may provide job numbers.  *See, e.g.*, *Timothy R. v. O'Malley*, No. 1:23-CV-155-JVB, 2024 WL 2082542, at *2 (N.D. Ind. May 8, 2024) ("The Job Browser Pro SkillTRAN software is a "widely used, commercially available resource[ ]" that helps convert the Social Security Administration's Dictionary of Occupational Titles categorization system to the Bureau of Labor Statistics' Standard Occupational Classification system, which is necessary because only the latter provides job numbers."). Regardless, as the VE did not testify as to the specific source of the job numbers and nothing in the transcript plainly states the SOC to be the source of her job numbers, this observation does not impact the Court's decision.

In *Inoa v. Berryhill*, No. 18-CV-163 (JPO), 2019 WL 1407487, at *5 (S.D.N.Y. Mar. 28, 2019), the Southern District of New York stated as follows:

> this Court cannot say that the ALJ lacked "substantial evidence" on which to conclude that "'substantial' positions exist[ed]" for all four jobs about which Komarov testified. *Brault*, 683 F.3d at 450 n.6. As in *Brault*, *see* 683 F.3d at 451, here too Inoa's counsel reviewed [VE] Komarov's qualifications and raised no objection to them prior to her testimony, and the ALJ, after qualifying Komarov as a VE, then heard her expert testimony regarding the numbers of available jobs without any objection from Inoa or her counsel. Given that Komarov had earlier explained that her testimony was offered "on the basis of [her] professional experience and clinical judgment, and [it] was not undermined by any evidence in the record," *McIntyre*, 758 F.3d at 152, "[n]othing more was required" of the ALJ, *Brault*, 683 F.3d at 451. In the "absence of any applicable regulation or [a Second Circuit] decision . . . requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation," *id.* at 450 (internal quotation marks omitted), the Court cannot say that the ALJ's reliance on Komarov's qualified and unobjected-to expert testimony regarding those numbers constitutes legal error. And particularly because "[t]he ALJ did not need to find specific numbers of jobs—all [that] he was required to do was find that 'substantial' positions exist," the Court must conclude that the record as a whole, and most particularly Komarov's expert testimony, provides "substantial evidence supporting that finding." *Id.* at 450 n.6.

*Inoa v. Berryhill*, No. 18-CV-163 (JPO), 2019 WL 1407487, at *6 (S.D.N.Y. Mar. 28, 2019) (internal record citations omitted).

Here, as in *Iona*, plaintiff's counsel did not challenge the VE's qualifications and raised no objection to the VE's job numbers, nor did he question her source, beyond asking, generally, if her testimony given that day was consistent with the DOT or SCO,[10] and there was nothing in the record that undermines her testimony. *See* T at 2077. However, unlike in *Iona*, the VE here did not testify that her testimony regarding job

---

[10] Selected Characteristics of Occupations. *See Nieto v. Comm'r of Soc. Sec.*, No. 20-CV-3138 (BMC), 2021 WL 1784317, at *2 (E.D.N.Y. May 5, 2021) (defining SCO as "a companion publication to the DOT, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles.").

numbers was offered "on the basis of [her] professional experience and clinical judgment[.]" *Iona*, 2019 WL 1407487, at *6. Thus, this Court has some concern that, even though the VE is not required to testify with specificity, her testimony regarding job numbers fails even the minimal standards articulated in *Iona*. It is not that the Court doubts that the job numbers are accurate or believes there is no basis for them; rather, it is that it does not even know the bare minimum – source of the numbers. *Cf. McIntyre*, 758 F.3d at 152; *see Crespo v. Comm'r of Soc. Sec.*, No. 3:18-CV-00435 (JAM), 2019 WL 4686763, at *9 (D. Conn. Sept. 25, 2019) (reviewing Supreme Court of the United States precedent, *Biestek v. Berryhill*, 587 U.S. 97 (2019), to conclude that a court is to take a case-by-case approach where VE does not reveal source of job numbers).

The Court balances its concern with the fact that plaintiff's counsel did not challenge the VE's testimony regarding job numbers. *See Bruce C. v. Kijakazi*, No. 3:20-CV-782 (DJS), 2021 WL 5112077, at *5 (N.D.N.Y. Nov. 3, 2021) (finding it "significant" that plaintiff's counsel did not challenge VE job numbers at hearing, despite opportunity to do so) (first citing *Shanan L. v. Comm'r of Soc. Sec.*, 2020 WL 2404763, at *10 (N.D.N.Y. May 12, 2020), then citing *Michelle M. v. Comm'r of Soc. Sec.*, 2020 WL 495170, at *9 (N.D.N.Y. Jan. 30, 2020)); *see Pamela M. H. v. Comm'r of Soc. Sec.*, No. 5:23-CV-00197 (AMN/CFH), 2024 WL 1468906, at *6 n.10 (N.D.N.Y. Feb. 22, 2024), *report and recommendation adopted*, No. 5:23-CV-00197 (AMN/CFH), 2024 WL 1131043 (N.D.N.Y. Mar. 15, 2024) (citing *Harvey v. Astrue*, No. 5:05-CV-1094 (NAM), 2008 WL 4517809, at *15 (N.D.N.Y. Sept. 29, 2008) (noting that, "absent an objection, the ALJ is entitled to rely on the vocational expert") (citing *Donahue v. Barnhart*, 279

15

F.3d 441, 446 (7th Cir. 2002))); *Jennifer S. v. Comm'r of Soc. Sec.*, No. 24-CV-334-LJV, 2026 WL 98423, at *7 (W.D.N.Y. Jan. 14, 2026) ("[C]ounsel did not object to the vocational expert's methodology at any time prior to the ALJ's decision. Counsel could have asked for the vocational expert's underlying data, counsel could have argued at the hearing that the vocational expert's testimony should not be credited, or counsel could have submitted briefing questioning the vocational expert's 'flawed' process. But counsel did not do any of that.") (cleaned up and internal citations omitted).

However, even if the Court were to (1) find the lack of specific testimony about the source of the VE's job numbers as grounds for remand, (2) assume the job numbers counsel for plaintiff proposes are correct,[11] and (3) find that plaintiff's failure, while represented by counsel, to object to the VE's testimony or raise this issue at the administrative level was not fatal to the argument on appeal, the Court still would find that plaintiff's proposed job numbers represent a significant number of jobs in the national economy that plaintiff can perform.  In contending that 9,957 jobs in the national economy does not suffice to meet the Commissioner's step five burden, plaintiff cites one case, *Hanson v. Comm'r of Soc. Sec.*, 15-CV-0150, 2016 WL 3960486, at *14 (N.D.N.Y. June 29, 2016), which held that 8,404[12] jobs did not amount to a sufficient number of jobs available in the national economy.[13]  Dkt. No. 12 at 11.  "Under the

---

[11] The Court notes that at least one court in this Circuit has rejected an argument based on a plaintiff's counsel's independent research as to job numbers.  *See Poole v. Saul*, 462 F. Supp. 3d 137, 165 (D. Conn. 2020).

[12]  Even with plaintiff's proposed numbers there are 1,553 more jobs available to plaintiff in the national economy than in *James B.*, 2024 WL 4471080, at *2, the case plaintiff cites and urges the Court to follow.

[13]  The Court is aware of additional cases holding similar numbers did not amount to a significant number of jobs in the national economy.  *See, e.g.*, *Annemarie B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-129 (FJS/CFH), 2024 WL 758821, at *6 (N.D.N.Y. Feb. 5, 2024), *report and recommendation adopted*, No. 123CV129FJSCFH, 2024 WL 756942 (N.D.N.Y. Feb. 23, 2024) (citing cases).  However, there are also several cases finding those numbers close to 10,000 do amount to sufficient numbers in the national economy.  *See supra* at 13, *infra* at 14 (citing cases).

prevailing law of courts within the Second Circuit, a 'significant number' of jobs is fairly minimal.  [N]umbers between 9,000 and 10,000 jobs have typically been found to be sufficiently significant to meet the Commissioner's burden." *James B. v. Comm'r of Soc. Sec.*, No. 23-CV-873-FPG, 2024 WL 4471080, at *2 (W.D.N.Y. Oct. 11, 2024) (quoting *Sean Michael S. v. Comm'r of Soc. Sec.*, No. 20-CV-942, 2021 WL 5918922, at *11 (N.D.N.Y. Dec. 15, 2021) (internal quotation marks and citations omitted)); *see Diane D. v. Saul*, No. 5:18-CV-1146 (DJS), 2020 WL 1044136, at *6 (N.D.N.Y. Mar. 4, 2020) ("Others, in fact, have found that job numbers over 9,000 have been held to be significant.") (citing *Sanchez v. Berryhill,* 336 F. Supp. 3d 174, 177-78 (W.D.N.Y. 2018) (holding 9,046 jobs in national economy sufficient to meet step five burden), then citing *Hanson v. Comm'r of Soc. Sec.*, 2016 WL 3960486, at *13 (N.D.N.Y. June 29, 2016), *report and recommendation adopted sub nom. Hanson v. Colvin*, 2016 WL 3951150 (N.D.N.Y. July 20, 2016) ("Courts have held that numbers varying from 9,000 upwards constituted 'significant'" numbers in the national economy); *Maldonado v. Comm'r of Soc. Sec.*, No. 21-CV-7594 (RWL), 2023 WL 243617, at *10 (S.D.N.Y. Jan. 18, 2023) ("District courts thus have found varying nationwide numbers upwards of 9,000 jobs sufficient to meet the significant number requirement."); *Kelly D. v. Saul*, No. 18-CV-1190, 2019 WL 6683542, at *6 (N.D.N.Y. Dec. 6, 2019) (holding 9,996 jobs available in national economy was significant number).

The Court observes that in her August 16, 2024, decision, the ALJ cited the jobs and job numbers that the ALJ testified to in the 2022 hearing.  *Compare* T at 25 *with* T at 2047 *with* T at 2071-3.  Plaintiff addresses this issue in one sentence, contending that the ALJ is "relying on stale numbers from prior VE testimony in March 2022, as opposed

17

to August 2024," contending that the ALJ's numbers are "even (sic) unreliable."  Dkt. No. 12 at 22.  The Commissioner addresses this in a foot note, stating, "to the extent he is suggesting that the ALJ should have instead relied on Ms. Calderon-Hall's 2024 testimony, he ignores that this testimony also supports the ALJ's ultimate conclsion that he was not disabled" because Ms. Calderon-Hall identified an even greater number of jobs that someone with the same RFC as the ALJ assessed in 2022 could perform, including 165,000 marker jobs – and further indicated that these were only 'examples' of available occupations."  Dkt. No. 17 at 15 n.7.

Although the Court is unaware whether the ALJ's inclusion of the 2022 VE's job numbers instead of the 2024 VE's job numbers was intentional or accidental, the Court does not find this to be an independent ground for remand for three reasons.  First, the VEs in both hearings was presented with the same hypothetical.  Second, the VEs in both hearings testified to sufficient numbers of jobs available in the national economy, including two of the same positions.  Further, when routing clerk is removed from the equation, there remain jobs[14] that exist in significant numbers in the national economy – both under the VEs' testimonies.  Third, in discussing the ALJ's citing of VE Blythe's proposed job numbers, plaintiff alleges only that these earlier numbers are stale, yet, he presents his own numbers for the jobs VE Blythe proposed, and those numbers – as discussed above – still amount to significant numbers in the national economy.

In sum, the undersigned concludes that whether the analysis considers the VE's employment figures as adopted by the ALJ or the proposed employment figures provided by the plaintiff's counsel, the Commissioner satisfies his burden at step five.

---

[14] Plaintiff does not provide proposed SkillTran numbers for the marker position, for which the VE testified there are "approximately 165,000 jobs in the national economy." T at 2071-72.

Although plaintiff's counsel suggested total number of 9,957 available jobs is slightly under 10,000, a number some courts have chosen as a "cut off," the Court declines to adopt 10,000 jobs as a bright-line rule. *See Pichardo v. Comm'r of Soc. Sec.*, 714 F. Supp. 3d 183, 195 (E.D.N.Y. 2024) ("Courts have not established a bright line test as to the threshold number of jobs that is considered 'significant' for purposes of the Act.") (citing *Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 177 (W.D.N.Y. 2018) (citation omitted)).

Accordingly, the Court concludes that the Commissioner has satisfied his step-five burden to show that there is work in the national economy existing in significant numbers that plaintiff can perform.

### V.  Conclusion

**WHEREFORE**, for the reasons detailed herein, it is hereby

**ORDERED**, that plaintiff's cross-motion for judgment on the pleadings, dkt. no. 12, is **DENIED**; and it is further

**ORDERED**, that the Commissioner's cross-motion for judgment on the pleadings, dkt. no. 17,  is **GRANTED**, and it is further

**ORDERED**, that the Clerk serve this Memorandum-Decision & Order on parties in accordance with the Local Rules.

Dated: March 9, 2026
      Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge

19